# 23-295

UNITED States Court of Appeals
For THE Second circuit

## Khari Devon Coley
### Plaintiff - Appellant

V

## CO W Garland Et Al
### Defendant - Appellee

On Appeal From the United States District court
For the Northern District of New York

Appendix oF Appeallant Khari Devon Coley

Khari Devon coley DiN#13A0904 Pro-se
Great meadow C.F
PO BOX 51
Comstock NY, 12821~0051

*Khari Devon Coley*

# Table of contents

1. Verification when Notary public is unavailabe

2. Questions Presented

3. Notice of Appeal

4. Judgment in civil case

5. District court Ruling

6. Case law

7. Argument

8. certificate of service

## VERIFICATION WHEN NOTARY PUBLIC IS UNAVAILABLE

I, _Khari Coley_, am a prisoner of the State of New

York, currently incarcerated at the Great Meadow Correctional Facility, which is located at

11739 State Route 22, P.O. Box 51, Comstock, new York 12821-0051 and my ability to acquire

the services of a Notary Public is entirely under the control of correctional staff and officials. I

have made several attempts to obtain a Notary Public via Law Library as well as requesting the

same to my company and block office here at Great Meadow. As of the date of this Verification

I have not received Notary Public services as required by _Bounds v. Smith_, 430 U.S. 817,824-25

(1977). Due to timeliness I do not know when the next available Notary Public services will be

available.

Therefore, I am verifying the enclosed documents by the method approved in the court

decision of the New York Court of Appeals pursuant to _People v. Sullivan_, 56 N.Y.2d 378

(1982) to wit:

> I verify that the foregoing statements and/or documents are
> true and accurate to the best of my knowledge. That I base them
> upon facts that I personally know, or believe in good faith to be true.
> I further declare and/or verify that any false statements made herein
> are to be punishable as a class A misdemeanor pursuant to Penal
> Law § 210.40. I further understand that to offer or present the
> foregoing documents to a judicial officer, knowing that it contains
> any false statement(s) is punishable pursuant to penal Law § 170.30.

Executed on this _30_ day of _May_ , 20 _23_.

I declare under the penalty of perjury that the foregoing is true and correct pursuant to 28
U.S.C. § 1746

# Questions Presented

Did the District court Abused It's Discretion When Granting Summary Judgment to DeFendant's without Holding an Evidentia Hearing to Determine whether Did Plaintiff had Exhausted Administrative Remedies?

Did the District court error when it didn4 consider DOC Grievance Procedure that apply to SHU?

FORM 1

## NOTICE OF APPEAL

**NOTE:**
You may use this form to take an appeal provided that it arrives in the office of the Clerk of
the district court within 30 days of the date of entry of the decision (60 days if the United
States or an officer or agency of the United States is a party).

* * * * * * * * * * * * * * *

### UNITED STATES DISTRICT COURT
### FOR THE
Northern DISTRICT OF New York

Khari Devon coley
Plaintff
v
W Garland et al
Defendant

<u>NOTICE OF APPEAL</u>

9:19-cv-00382 LEK/ATB
Docket No.

Notice is hereby given that _Khari Devon coley_
(party)

hereby appeals to the United States Court of Appeals for the Second Circuit from the decision
(describe it).

entered in this action on the _20_ day of _January_, 20 _23_

_Khari Devon coley_
Signature
_Greatmeadow c.F_
Address
_PoBox 51 comstock NY 12821_

( )
Telephone No. (with area code)

Date: _____

United States District Court
Northern District of New York

# JUDGMENT IN A CIVIL CASE

KHARI DEVON COLEY,

Plaintiff,

V.                              CASE NUMBER: 9:19-CV-382 (LEK/ATB)

W. GARLAND, et. al.,

Defendants.

**[x]**          **Decision by Court.**  This action came to trial or hearing before the Court.
The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED, that this action is dismissed pursuant to the
Memorandum-Decision and Order filed January 20, 2023 of Senior Judge Lawrence E.
Kahn which ORDERED that Defendants' motion for summary judgment (Dkt. No. 93 ) is
GRANTED because of Plaintiff's failure to exhaust administrative remedies.

January 20, 2023
DATE

_____
Clerk of Court

s/Nancy A. Steves
(BY) DEPUTY CLERK

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district court within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf—including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KHARI DEVON COLEY,

                        Plaintiff,

        -against-                                              9:19-CV-00382 (LEK/ATB)

W. GARLAND, *et al.*,

                        Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Plaintiff Khari Coley commenced this action pro se on April 1, 2019, alleging violations

of his Eighth Amendment rights arising out of his confinement at Upstate Correctional Facility.

Dkt. No. 1 ("Complaint").[1] On May 8, 2019, the Court issued a Decision and Order granting

Plaintiff's IFP application and directing Plaintiff to file an amended complaint to "properly name

[the unidentified] individuals as parties" to the action. Dkt. No. 7 ("May Order") at 6. In

response to the May Order, Plaintiff filed an amended complaint, Dkt. No. 28 ("First Amended

Complaint"), but failed to include his signature. Plaintiff later signed the Amended Complaint,

Dkt. No. 31, and shortly thereafter, filed another Amended Complaint, Dkt. No. 34 ("Second

Amended Complaint" or "Amended Complaint"), alleging violations of his Eighth Amendment

rights including: (1) deliberate indifference to serious medical needs; (2) excessive force; and (3)

failure to intervene, against defendants W. Garland, Nathan T. Locke, William Hoffnagle, Joseph

R. Ranger, and Randy Russell (collectively, "Defendants").[2]

---

[1] Plaintiff is now represented by counsel. Dkt. Nos. 77, 81.

[2] Plaintiff also filed a motion to appoint counsel, Dkt. No. 30, which the Court denied. Dkt. No. 38.

On January 21, 2020, Defendants filed a motion to dismiss Plaintiff's medical indifference claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 57. In a Decision and Order dated September 16, 2020, the Court granted Defendants' motion to dismiss.[3] Dkt. No. 80 ("September Order").

Now before the Court is Defendants' motion for summary judgment, Dkt. No. 93 ("Motion") regarding Plaintiff's two remaining Eighth Amendment claims alleging excessive force and failure to intervene. Defendants have also submitted a statement of material facts. Dkt. No. 93-9 ("Defendants' Statement of Material Facts"). Plaintiff has filed a response to Defendants' statement of material facts, Dkt. No. 100 ("Plaintiff's Response to Defendants' Statement of Material Facts") and a memorandum of law, Dkt. No. 100-1 ("Plaintiff's Memorandum"). Defendants filed a reply. Dkt. No. 101 ("Defendants' Reply"). For the reasons that follow, Defendants' Motion is granted.

## II.   BACKGROUND

### A. Factual Background

The following facts are taken from Defendants' statement of material facts, Dkt. No. 93-2, and are undisputed unless otherwise noted. Facts unrelated to the current motion are detailed in the Court's September Order. Dkt. No. 80 at 3–5.

At all times relevant to this action, Plaintiff was confined at Upstate Correctional Facility ("Upstate C.F."). Defs.' SMF ¶ 2. At approximately 6:00 PM on October 31, 2016, Correction Officer ("C.O.") Russell was completing security rounds and passed by Plaintiff's cell. Id. ¶ 3. As Russell passed by Plaintiff's cell, he observed that a bed sheet was tied around Plaintiff's

---

[3] In its Decision and Order, the Court also denied Plaintiff's motion to amend, Dkt. No. 68, and denied Plaintiff's letter motion for injunctive relief, Dkt. No. 70.

neck and that the sheet was secured to the inside of the cell door. Id. ¶ 4. Plaintiff, however,

maintains that he never tied anything around his neck during this incident. Pl.'s Resp. to Defs.'

SMF ¶ 4.

According to Defendants, Russell then ordered Plaintiff to untie "the noose," but Plaintiff

did not comply. Defs.' SMF ¶ 5. In response, Russell immediately called for assistance. Id. ¶ 6.

Plaintiff contests these facts and denies that this conversation occurred because he asserts that he

did not have anything around his neck. Pl.'s Resp. to Defs.' SMF ¶ 5.

Sergeant William Hoffnagle and other security staff responded to Russell's call for

assistance. Id. ¶7. Hoffnagle ordered staff to enter the cell and free Plaintiff of the bed sheet

around his neck. Id. ¶ 8. According to Defendants, after Garland and Locke entered Plaintiff's

cell, they assisted Plaintiff to his feet and Garland removed the sheet from Plaintiff's neck. Id. ¶¶

9–10. Plaintiff, however, disputes that anything was around his neck during this incident. See

generally Pl.'s Resp. to Defs.' SMF.

Prison staff applied mechanical restraints to Plaintiff, id. ¶ 11, and Russell retrieved a

gurney that the prison staff placed Plaintiff on to transport him to the infirmary. Id. ¶¶ 12–13.

Plaintiff was examined in the infirmary and later transported by ambulance to an outside

hospital. Id. ¶ 15. Plaintiff did not lose consciousness "during the incident." Id. ¶ 16.

Defendants state that Plaintiff told a mental health professional at Upstate C.F. that his

purpose in his attempt to "hang up" was to "avoid a double cell." Id. ¶ 17. According to

Defendants, when the prison staff opened the cell to stop Plaintiff from "hang[ing] up," the cell

gate pulled the makeshift-noose on Plaintiff's neck and strangulated Plaintiff for a moment. Id. ¶

18. Plaintiff again disputes that he placed anything around his neck and also denies stating that

he admitted that he tried to hang himself. Pl.'s Resp. to Defs.' SMF ¶¶ 17–18.

3

Rachel Seguin is the Assistant Director of the Inmate Grievance Program ("IGP") of the New York State Department of Corrections and Community Supervision ("DOCCS"). Id. ¶ 20. In her capacity as Assistant Director of IGP, Seguin is the custodian of the records maintained by the Central Office Review Committee ("CORC"), the body that renders final administrative decisions under DOCCS's three-step grievance program. Id. ¶ 21. Seguin searched CORC records and determined that Plaintiff did not file a grievance appeal with CORC related to any issue connected to Plaintiff's claims in this action. Id. ¶ 22.[4]

Similarly, Sherri Debyah is an Inmate Grievance Program Supervisor at Upstate C.F. and is responsible for keeping records of grievances filed by inmates at that facility. Id. ¶ 23. At all times relevant to this action, Upstate C.F. had a fully functioning inmate grievance process available. Id. ¶ 24.[5] Based upon her search of the Inmate Grievance Program files, Debyah concluded that the Upstate C.F. Inmate Grievance Program did not contain records of any grievance filed by Plaintiff relating to the issues in the present action. Id. ¶ 25. Additionally, Plaintiff was familiar with the different steps of the inmate grievance process, id. ¶ 26, and had filed grievances at Upstate C.F. about other incidents. Id. ¶ 27.

## III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

---

[4] Plaintiff disputes that these searches occurred but fails to provide any evidence to the contrary. See Pl.'s Resp. to Defs.' SMF ¶¶ 21–22.

[5] Plaintiff disputes that Upstate C.F.'s grievance process functioned properly but fails to specifically point to any issues associated with Upstate C.F.'s grievance process beyond a general citation to Plaintiff's deposition. See Pl.'s Resp. to Defs.' SMF ¶ 24.

outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes

of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

Defendants argue there are no genuine disputes of material fact regarding Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff's assertions are contradicted by the record and thus raise no constitutional violations; and alternatively (3) Defendants are entitled to qualified immunity. Mot. at 5–15.

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Johnson v. Killian</u>, 680 F.3d 234, 238 (2d Cir. 2012) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Killian</u>, 680 F.3d at 238 (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." <u>Ross v. Blake</u>, 578 U.S. 632, 642 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable

for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

In New York State:

> DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).

> Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).

> Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. §

701.5(d)(1)(i). CORC is to render a written decision within thirty
calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report
and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

In the case of "harassment grievances," which are "grievances that allege employee
misconduct meant to annoy, intimidate or harm an inmate," New York State regulations establish
an expedited procedure by which the grievance clerk forwards the grievance directly to the
facility superintendent for action. 7 N.Y.C.R.R. §§ 701.2(e), 701.8(d). The inmate, however,
must still initially file the grievance with the prison's grievance clerk in accordance with
ordinary procedure. Id. §§ 701.8(a)–(c). The grievance supervisor will then determine whether
the grievance raises a bona fide issue of harassment meriting an expedited process. Id. §
701.5(a)(2). Once a grievance is designated a "harassment grievance," the superintendent must
respond within a set time frame, and the inmate may appeal directly to the next step if he
receives no response within that time frame. Id. §§ 701.8(f)–(g).

Moreover, the Second Circuit has held that factual disputes concerning exhaustion under
the PLRA must be determined by courts rather than juries. Messa v. Goord, 652 F.3d 305, 308–
09 (2d Cir. 2011) ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes
are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-
exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative
defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason,
No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation
adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, the Court concludes that Defendants have satisfied their burden of proof.
Defendants provide testimony from Seguin and accompanying records demonstrating that

8

Plaintiff did not file the required grievance appeal with CORC. Dkt. No. 93-3. Additionally,

Defendants also submit testimony from Debyah, the inmate supervisor at Upstate C.F., stating

that the prison has no record of grievances filed by Plaintiff related to his claims in this action.

Dkt. No. 93-4. She also supported this testimony by providing a copy of Plaintiff's grievance list

from Upstate C.F. Id. at 4.

Furthermore, the Court is unpersuaded that administrative remedies were unavailable to

Plaintiff under Ross's first two exceptions. Indeed, Plaintiff testified that he had successfully

filed and appealed grievances in the past at Upstate C.F., Dkt. No. 93-2 ("Plaintiff's Deposition")

at 102–04, which suggests that the DOCCS grievance process was not a "dead end" or

"incapable of use." Lurch v. Bui, No. 19-CV-895, 2020 WL 8450543, at *5 (N.D.N.Y. Dec. 8,

2020), report and recommendation adopted Lurch v. Jones, 2021 WL 392486 (N.D.N.Y. Feb. 4,

2021) ("[T]he Court notes that the record establishes that Plaintiff has filed other grievances and

appealed at least one prior grievance denial to CORC. This shows that Plaintiff did not view the

filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS'

inmate grievance policy and could navigate it when he wished to pursue a grievance. As such the

first two exceptions identified under Ross are not applicable here") (internal citations and

quotations omitted); Gonzalez v. Coburn, No. 16-CV-6174, 2017 WL 6512859, at *6 (W.D.N.Y.

Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate

grievance program demonstrates that the program was neither a dead-end or so opaque that

Plaintiff could not avail himself of it.").

Similarly, the PLRA's third textual exception is also inapplicable here. Plaintiff argues

that his grievances against Defendants never received a response, which is evidence that

Defendants "destroyed his grievances and disallowed him from filing grievances." Pl.'s Mem. at

11. Because of this absence of response and presence of alleged interference, Plaintiff argues he should be excused from the PLRA's exhaustion requirement. However, Plaintiff does not provide evidence of Garland or any other Defendant meddling with his grievances that suggests the presence of interference. Id. at 10–13.

The Second Circuit's decision in Cicio v. Wenderlich is instructive. 714 Fed. App'x 96 (2d Cir. 2018). There, the plaintiff argued that the PLRA's exhaustion requirement should be waived because he never received a response to the grievance he purportedly filed. Id. at 97. The Second Circuit noted, "When a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal. Because [the plaintiff] did not exercise his right of appeal, he did not exhaust his available administrative remedies. Accordingly, the PLRA bars the instant action." Id. at 97–98. The Second Circuit further reasoned, "We also reject Cicio's argument that the non-response to his grievance constituted manipulation, so as to excuse the exhaustion requirement." Id. at 98. Here, like Cicio, it is undisputed that Plaintiff did not file an appeal after his grievances allegedly went unheard by prison staff. And because Plaintiff did not "exercise his right of appeal, he did not exhaust his available administrative remedies," and accordingly, the Court "rejects [Plaintiff's] argument that the non-response to his grievance constituted manipulation, so as to excuse the exhaustion requirement." Cicio, 714 Fed. App'x at 97–98. As a result, because Plaintiff did not comply with DOCCS's grievance process and because he failed to provide evidence that Defendants interfered with his grievances, he has not demonstrated that the Court should waive the exhaustion requirement pursuant to the PLRA's third textual exception.

As a final matter, Plaintiff argues that the exhaustion requirement should be waived because he mailed letters and appealed to other officials outside DOCCS's formal grievance

process. Pl.'s Mem. at 12. However, "the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." Timmons v. Schriro, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015); Simons v. Campos, No. 09-CV-6231, 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010) ("Assuming the truth of the Complaint, the plaintiff's oral statements to various officials and his letter to the superintendent fail to satisfy the . . . exhaustion requirement."). Consequently, Plaintiff's informal letters outside DOCCS's grievance process are insufficient under the PLRA's exhaustion regime.

As a result, the Court grants Defendants' motion for summary judgment because Plaintiff has failed to exhaust his administrative remedies under the PLRA. Because the Court grants summary judgment on the basis of failure to exhaust, the Court declines to address Defendants' alternative arguments.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 93) is **GRANTED** because of Plaintiff's failure to exhaust administrative remedies; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      January 20, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge

12

Ross v blake U.S 136 Sct 1850 195 LEd 2d 117 (2016) a case that addressed when Prison Officials effectively render certai otherwise availabe administrative remedies "Unavailabe" suci that an inmate is thus incapable of exhausting them.

Second circuit adopted the Ross "availability" analysis in williams v correctional officer Priat No 829 F3d 118 (2d cir 2016) to determine Whether an inmate exhausted the Administrative Remedies Required under the PLRA on the facts of that case we determined that the administrative remedies williams failed to Pursue were "unavailable" within the meaning of the Ross test and therefore found that his suit was Not barred. IN deciding defendants Summary Judgment motion the Guidance Provided by Ross and williams was Not available to the District court the court therefore did Not undertake the Newly articulated availability analysis.

medina v Napoli 725 Fed APPX 51 (2018) Petitioner Anthony medina appeals the District court ORDER granting Summary Judgment in favor of defendants based on a determination that medina had failed to exhaust his Administrative inmate Grievance Procedure Prior to bringing an action in Federal court. The Alleged actions of the defendants in handling medina's Grievances with regard to the June incident bear a strong Similarity to those of the defendants in williams. Medina like williams was an inmate in SHU who was required to rely on correctional officers to file his Grievances and both medina and williams alleged that those officers intentionally discarded the Grievances to Prevent them from being filed. 829 F3d 124 the williams decision makes clear that the Prison Grievance Regulations "Plainly do Not describe a mechanism for Appealing a Grievance that was Never filed by reason of in action or obstruction by Prison officials resulting in a situation where "the Process to appeal an unfiled and unanswered Grievance is Prohibitively opaque such that No inmate could actually make use of it.

on october 31st, 2016 at upstate correctional Facility Approximately 6:00pm the plaintiff was Assaulted by Numerous staff suffered serious inurys to Neck and back

Plaintiff was in his cell located in SHU 9-C-1-22 waiting For Food on 9-C-1 when wayne L Garland got to plaintiff cell 22 he pour wate in my tray and pushed It in my tray slot then called me a "Nigger" I told him he is wrong For that he told me Fuck you Nigger I don't like your kind I'll be back to teach you he did his rounds walked pass 22 cell turned around and called in a "hang up" Defendant co wayne L Garland and co Nathan T Locke enter the cell 22 Defendant co wayne L Garland throw me around the cell and slamed my Face on the wall table, chair Defendant co Randy J Russell Kicked me in the back and stomach Defendant co Nathan T Locke Slamed my Face on the toilet Defendant co wayne L Garland punched and kicked me in the Ribs Defendant co wayne L Garland picked me up and slamed me on my Neck braking It Defendants cojosph R Granger and SGt Hoffnagle william Failure to intervene in the on going Assault.

Prison staff applied me chanical restrains to plaintiff and Defendant co Randy J Russell retrieved a gurney that the prison staff placed plaintiff on to transport him to the infirmary. Defendant SGt Hoffnagle william told plaintiff he would beat me up IF I didn't listen the Nurs stated she didn't see any marks around my Neck that would have been there IF It was. also pictures show blood every where even on the wal I had a black eye bused lip Fractures to Neck C-6 and C-7 I was transported to two Hospitals then I came back to upstate c.F to OMHce on watch with No pen or paper so I told Reggie who was waiting to leave he omH cell to write Grievance For me, being in SHU inmates have to gave any mail to correctional officer the Grievance complaint was gavin to correctional Facility to File For me 10-31-2016 the correctional officers intentionally discarded the Grievance to prevent It From being Filed the prison Grievance regulations plainly do Not describe a mechanism For appealing a Grievance that was never Filed by reason of in action or obstruction by prison officials resulting in a situation where "the process to appeal an unFiled and unanswered Grievance is prohibitively opaque such that No inmate could actually make use of it. Plaintiff was transferr to marcy c.F and then moved to Attica c.F while at this Facility Petition Filed multable Grievances about the use of excessive Force Defendants beating me up OSI came to see me about 3 times about the Defenda beating me up and being Deny medical Petitioner wrote upstate c.F GRC asking about Grievance also put in a FOIL request I was transferred to marcy c.F where I wrote more Grievances about the co's at upstate c.F I was transferred to Auburn c.F where I Filed more Grievances about the Defendants beating me up and being Deny medical Petitioner was transferred to Green Haven c where I Fifed more Grievances about Defendants beating m

Plaintiff filed a total of 250 grievances at least 500 from I recieved
the Defendants beating me up Grievance about Assault From
Rachel Seguin she said that I didn't have to file so many Grievance
about the 10-31-2016 A Assault and that OSI investigated
the Assault. I have a total of 1,300 pages of medical
records with letters to DOCCS executive team corc
in Albany commissioner Governor office and other DOCCS
staff at upstate C.F FOIL request to upstate C.F asking
about Grievances that was never answered. MR michael
H Sussman took my case I gave him the copy of 10-31-16
Grievance and corc answer from Rachel Seguin
250 Grievances 1,300 pages of medical records and
letters to DOCCS staff ab upstate C.F about the Assault
video that had sound Now it don't have me screaming what
my lawyer said I told him the video show me geting my face
Geting slamed in the wall pictures of cell blood every
where even on the same wall the video shows sherri Debyan
Said petitioner filed Grievances about other things at
upstate C.F that I believe it was about me being taken
off pain medication by DR that help with the pain of
having my neck broken and mini fracture that was so small
MR I don't show in my back I did say something about the Defendants
beating me up. Plaintiff filed 42 U.S.C § 1983 civil rights complaint
in the united states District court for the Northern District
12-3-2019 alleging violation of 8th Amendment rights
incluing Deliberate indifference to serious medical
Needs excessive force failure to intervene 14th
Amendment rights to be free of cruel and unsual panishment
Due process clause against Defendants co wayne L Gari and
co wathan t Locke co Randy J Russel co Josph R
Granger Sgt Hoffnagle williams collectively Defendants
case was Dismiss For failure to exhaust vailable
Administrative remedies
the Guidance provided by Ross and williams was Not used
by District court Plaintiff request that an evidentiary hearing
be conducted pusuant to messa v Goord 652 F3d 305 (2dcir2
to address whether with respect to failure to exhaust
administrative remedies prior to commencing this
action may be excused this Appeal should be reversed and
Sent back to District court For exhaust hearing.

Defendants Failed to put forth any Evidence showing that plaintiff received information about how to pursue administrative remedies when a Grievance is unfiled and unanswered.

· Defendants should pay plaintiff Filing Fee Refundable to $500.00 to Inmate accounts

Where fore Khari Devon coley prays for Judgment in his favor and such Additional relief as the court may Deem Just and proper

*Khari Devon Coley*

5-24-23

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

U.S.C.A. Docket No. 23-295

CERTIFICATE
OF SERVICE

Khari Devon Coley

**V.** *Case Caption*

Co W Garland Et AL

I, _Khari Devon Coley_ hereby certify under the penalty
        *NAME*

of perjury that on the _30_ day of _May_ , _2023_ . I
                      *DAY*          *MONTH*        *YEAR*

served by United States Mail or hand delivery the _____

_Appeal brief_
        **(NAME OF DOCUMENT: Motion, Brief, Letter, etc.)**

on the following:

_Alexandria Twinem_
*NAME*

_NYS office of Attorney General_

_Division of Appeals & opinions_

_the capitol Albany NY 12224_
*ADDRESS*

_____
*NAME*

_____

_____

_____
*ADDRESS*

_Khari Devon Coley_
**SIGNATURE**

Khari Devon Coley
Great meadow C.F
P o box 51                          Docket # 23-295
Comstock NY /2821

Dear clerk

I would like to request a waiver of the Appendix
and request that the court accept Appeal brief
Please Grant motion as it is

*[signature]*

2023 JUN -6 AM 11: 59
U.S. COURT OF APPEALS

LEGAL MAIL

Cre...
pal...
com.st. Ch. NY/1221

Great Meadow/
Correctional Facility

NEOPOST
05/31/2023
US POSTAGE $0

U.S Court of Appeals For Second circuit
40 Foley Square
New York NY 10007

SDNY
USDC